UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BALTIERRA, | Case No. 1:21-cv-01723-NODJ-HBK (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DISMISS CASE FOR FAILURE TO STATE A CLAIM[1] |
| v. | |
| KELLY SANTORO, et al., | (Doc. No. 29) |
| Defendants. | 14-DAY DEADLINE |

Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's second amended complaint. (Doc. No. 29, "SAC"). For the reasons set forth below, the undersigned recommends that the district court dismiss the SAC because it fails to state any cognizable constitutional claim.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

1  which relief may be granted, or if it seeks monetary relief from a defendant who is immune from
2  such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

3      At the screening stage, the court accepts the factual allegations in the complaint as true,
4  construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v.*
5  *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.
6  2003).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or
7  unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.
8  1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual
9  basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

10     The Federal Rules of Civil Procedure require only that a complaint include "a short and
11 plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).
12 Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient
13 factual detail to allow the court to reasonably infer that each named defendant is liable for the
14 misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,
15 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not
16 sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.
17 *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not
18 required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
19 statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required
20 to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.
21 2009) (internal quotation marks and citation omitted).

22     If an otherwise deficient pleading can be remedied by alleging other facts, a *pro se* litigant
23 is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v.*
24 *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d
25 245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a *pro se* litigant on
26 how to cure the defects.  Such advice "would undermine district judges' role as impartial
27 decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131
28 n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE COMPLAINT

Plaintiff, a state prisoner proceeding pro se, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. No. 1). The Court screened Plaintiff's initial Complaint and found that it failed to state any cognizable constitutional claim. (Doc. No. 18). After being granted an extension of time, Plaintiff filed a first amended complaint. (Doc. Nos. 21, 22). The Court screened Plaintiff's FAC and found that it failed to state any cognizable constitutional claim. (Doc. No. 25). After being granted an extension of time, Plaintiff filed the instant second amended complaint ("SAC"). (Doc. Nos. 28, 29).

The events giving rise to the SAC took place at North Kern State Prison in Delano, CA. (*See generally* Doc. No. 29). The SAC identifies twelve defendants: (1) Kelly Santoro, Warden of North Kern State Prison ("NKSP"); (2) Roosevelt Whisenant, Regional Director of the Division of Adult Parole Operations; (3) Dominguez, correctional officer in B4, second watch "floor cop;" (4) John Doe, correctional officer in B4 second watch "floor cop;" (5) John Doe, correctional officer in B4, second watch "tower cop;" (6) John Doe, correctional officer in B5, third watch "floor cop;" (7) John Doe, correctional officer in B5, third watch "floor cop;" (8) John Doe, correctional officer in B5, third watch "tower cop;" (9) Jane Doe, correctional officer in B4, second watch "floor cop;" (10) John Doe, correctional officer in B4, second watch "floor cop;" (11) John Doe, correctional officer in B4, second watch "tower cop;" and (12) the State of California. (*Id*. at 2-4).[2] Plaintiff attaches to the SAC a copy of a bed assignment log, (*id*. at 14), Plaintiff's COVID-19 test results, (*id*. at 15-21), and the California Department of Corrections and Rehabilitation's responses to his grievance (*Id*. at 22-24). The SAC alleges claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and Eighth Amendment deliberate medical indifference and conditions of confinement claims. (*Id*. at 3).

---

[2] The Court refers to the page numbers of the SAC as reflected on the Court's CM/ECF system instead of the page numbers on Plaintiff's SAC.

The SAC sets forth the following facts, which are presumed true at this stage of the screening process.

Plaintiff arrived at NKSP on November 9, 2020, took a COVID-19 test upon his arrival, tested negative, and was placed in Building B5 for a three-week quarantine. (*Id*.). After completing quarantine and having all negative COVID-19 tests, Plaintiff was "cleared for general population." (*Id*. 3, 6). Instead, on November 30, 2020, B-5 housing staff, "John Doe floor cop #1," "John Doe floor cop #2," and "tower cop John Doe #3 tower cop (3rd watch)" told Plaintiff and "a few other inmates" NKSP "had no more bed space." (*Id*. at 6). As a result, Plaintiff was "temporarily housed" in B4 at NKSP, which was a "quarantine building" containing "quarantined [inmates] and inmates who were sick and tested positive with COVID-19." (*Id*. at 6, 8, 14). In the front of building B4 was a "big red sign" reading "CAUTION: This is a quarantine building, all staff beyond this point are to wear required face mask and protected hazemate [sic] suit." (*Id*. at 8). Plaintiff asked who authorized his move and was told, "the warden (Kelly Santoro), Captain John Doe, Sergent [sic] John Doe, the chain of command." (*Id*.).

The next day, on December 1, 2020,[3] Officer Dominguez, "correctional officer John Doe, and correctional officer John Doe tower cop" assigned Plaintiff to the second watch porter job in B4, which required him to sweep, mop, clean the shower, and pick up breakfast trays from sick inmates. (*Id*. at 8-9). When Plaintiff arrived in B4 there were no cleaning supplies in his building, and staff had to order supplies. (*Id*. at 9). On December 10, 2020 Plaintiff tested positive for COVID-19 on December 10, 2020. (*Id*.). Plaintiff "could not get out of bed," was "throwing up and using the bathroom room all over [himself]." (*Id*. at 11).

Liberally construed, the SAC alleges Defendants subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment by housing him in a COVID-19 quarantine building and requiring him to work as the second watch porter which resulted in him being exposing to and contracting COVID-19. (*See generally id*. at 3-13). As relief, Plaintiff

---

[3] Plaintiff alleges that he was made the second watch porter "the next morning" on November 31, 2020. (*Id*. at 8). Because there are only thirty days in the month of November, the Court presumes the date should be December 1, 2020.

4

seeks $7,500,000.00 in damages. (*Id*. at 7).

**APPLICABLE LAW AND ANALYSIS**

### A. Eleventh Amendment Immunity

The Eleventh Amendment to the U.S. Constitution bars suits for monetary damages against states and state agencies in district courts. *See P.R. Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies under its control may 'be subject to suit in federal court.'") (citation omitted); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.") (citation omitted); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claim brought under § 1983 in federal court . . . .").

As an agency of the State of California, CDCR is entitled to Eleventh Amendment immunity. *Brown v. Cal. Dep't of Corr*., 554 F.3d 747, 752 (9th Cir. 2009) (CDCR is a state agency entitled to Eleventh Amendment immunity). The SAC thus fails to state a viable § 1983 claim against CDCR.

### B. Supervisory Liability

Liability under section 1983 arises only upon a showing of personal participation by the defendant. "There is no respondeat superior liability under section 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (citations omitted). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. *Id*., *see also Starr v. Baca,* 652 F.3d 1202, 1206–07 (9th Cir. 2011).

When a "plaintiff names wardens [or other supervisory personnel] as defendants, plaintiff must specifically allege the warden's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional

1  deprivation." *Stephen v. Tilestone*, 2021 WL 289379 at *6, (E.D. Cal. Jan. 28, 2021). This is
2  because "wardens [and other supervisory personnel[ ] are not liable based solely on their role in
3  supervising prisons." *Id*.

4      Liberally construed, the SAC asserts Eighth Amendment claims against Defendants Kelly
5  Santoro, the Warden of NKSP, and Roosevelt Whisenant, the Regional Director of the Division
6  of Adult Parole Operations, based on their failure to address what Plaintiff alleges were
7  constitutional violations by employees they supervise. The SAC asserts that Defendant Santoro
8  "was well aware that B4 of North Kern State Prison was a Quarantine building and that I was
9  housed there well [sic] I was not sick" and that "nothing happens without the direct approval" of
10 these two supervisors. (*Id*. at 10). Beyond these conclusory statements, the SAC does not allege
11 any facts indicating Defendants Santoro and Whisenant knew of Plaintiff's housing or work
12 assignment or of any specific threat posed to Plaintiff by those assignments. Thus, the SAC fails
13 to allege sufficient involvement or knowledge by Defendants Santoro or Whisenant for them to
14 be liable under section 1983. Because the SAC fails to establish that Defendants Roosevelt and
15 Whisenant either participated in, directed, or knew of the alleged violations by their employees
16 and nevertheless failed to remedy them, the SAC fails to state a claim against these two
17 Defendants.

18     **C. Doe Defendants**

19     To state a claim under § 1983, a plaintiff must show that a defendant acting under color of
20 state law caused an alleged deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983;
21 *Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). The plaintiff can satisfy the causation
22 requirement by showing either (1) the defendant's "personal involvement" in the alleged
23 deprivation or (2) a "sufficient causal connection" between the defendant's conduct as a
24 supervisor and the alleged deprivation. *King v. Cty. of Los Angeles*, 885 F.3d 548, 559 (9th Cir.
25 2018).

26     The SAC sues nine Defendants identified as variations of John or Jane Doe. "As a general
27 rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d
28 637, 642 (9th Cir. 1980) (citation omitted). While "situations may arise where the identity of

alleged defendants cannot be known prior to the filing of a complaint," *id.*, a plaintiff must plead sufficient factual detail to allow the court to reasonably infer that each defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Here, Plaintiff fails to do so. The SAC asserts that on an unspecified date Plaintiff was approached by the following B5 housing staff: John Doe floor cop #1, John Doe floor cop #2, and Tower cop John Doe #3 (3rd watch) about his new housing assignment. (Doc. No. 29 at 7). On December 1, 2020, Plaintiff was approached by "B4 housing staff, correctional officer 'Dominguez,' correctional officer, John Doe #2, floor cop, [and] correctional officer John Doe, tower cop."[4] Other than Officer Dominguez, these facts fail to adequately allege a claim against any Doe Defendant because it does not describe what each individual Defendant did to violate Plaintiff's rights. *See Iqbal*, 556 U.S. at 678. Moreover, the SAC fails to include any facts whatsoever as to certain Doe Defendants, including Jane Doe, John Doe second watch floor cop, and John Doe second watch tower cop. (*See id*. at 4). Admittedly, due to the similarity in how the SAC describes these various Defendants, the Court cannot be certain that they are not explicitly referenced in the SAC.

In effect, Plaintiff seeks to sue a collection of unidentified defendants without making any individualized allegation as to each Defendant. Such ambiguous pleading is not permissible. "Plaintiff may not sue Doe [D]efendants collectively based on speculative beliefs as to whether they exist, or hypothetical allegations of what they may have done that violated Plaintiff's constitutional rights." *Hernandez v. Gonzalez*, 2010 WL 4917160, at *2 (E.D. Cal. Nov. 24, 2010). Accordingly, the SAC fails to adequately allege claims against any Doe Defendant except Defendant Dominguez, and the SAC may not proceed against the remaining Doe Defendants.

**D. Eighth Amendment – Conditions of Confinement**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); U.S. Const. Amend. VIII. Officials have an obligation to protect prisoners from the risk of infectious diseases. *Helling*, 509

---

[4] Due to the ambiguous punctuation in the SAC, it is unclear where the reference to each Doe Defendant begins and ends.

U.S. at 33 (citing cases critical of the failure to protect prisoners with contagious diseases from others). Inmates who allege they are being subjected to unsafe conditions that are violative to the Eighth Amendment must assert facts that reflect a showing of two components: (1) an "objective component"—the objective seriousness of the challenged condition, and (2) a "subjective component"—the responsible official's subjective state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

To satisfy the objective component of an Eighth Amendment claim a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," *Rhodes* v. *Chapman* 452 U.S. 337, 347 (1981); *accord Hudson v. McMillian*, 503 U.S. 1, 9 (1992). For a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *See Helling*, 509 U.S., at 35. There is no question that COVID-19 is a serious illness and courts have repeatedly found that a heightened risk of exposure to COVID-19 may satisfy the objective prong of the Eighth Amendment deliberate indifference analysis. *See Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, 2021 WL 2227636, at *9 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.'").

The second component follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted). To satisfy the subjective prong of a conditions of confinement claim, the inmate must show that the prison official was deliberately indifferent—"possessed a sufficiently culpable state of mind." *Id.* at 297-98. This requires the official to be aware of the substantial risk of harm and disregard that risk by failing to abate it using reasonable measures. *Farmer*, 511 U.S. at 837-45. This level requires more than negligence but less than actual malice. *Id.* at 835-36.

The Court acknowledges that COVID-19 poses a substantial risk of serious harm. To

state a cognizable Eighth Amendment claim, however, Plaintiff must provide more than generalized allegations that Defendants have not done enough to control the spread of the virus through housing policies or other measures. *See Booth v. Newsom*, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *Blackwell v. Covello*, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison); *Sanford v. Eaton*, 2021 WL 1172911, at *6 (E.D. Cal. Mar. 29, 2021) (explaining that "in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and the other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread" of COVID-19). As set forth below, Plaintiff fails to do so.

### 1. Plaintiff's Placement in Building 4

Liberally construed, Plaintiff contends that his placement in Building 4 was cruel and unusual punishment in violation of the Eighth Amendment. He fails to allege sufficient facts, however, showing that his risk of exposure to COVID-19 at NKSP was sufficiently serious to satisfy the objective prong of an Eighth Amendment violation. The SAC asserts that the door to Building 4 displayed a warning to staff that they should enter only with personal protective equipment, and thus "B4 and B5 housing staff of [NKSP] were all aware of the health risk to my person by putting me . . . in B4 when I was not sick." (Doc. No. 29 at 8). The SAC also asserts that Plaintiff "was moved to a quarantined building and made to live with quaratied [sic], and inmates who were sick and tested positive with COVID-19." (*Id*. at 14). Apart from stating that he was placed in a quarantine building, the SAC does not set forth facts establishing that housing Plaintiff there posed an unreasonable risk to his safety. *See Smith v. Santoro*, 2022 WL 3908131, at *4 (E.D. Cal. Aug. 30, 2022) (finding plaintiff failed to establish objective prong of Eighth Amendment claim where he was housed in quarantine building without testing positive for COVID-19, but did not set forth facts alleging how COVID-19 presented a high risk to him), *report and recommendation adopted*, 2022 WL 4484301 (E.D. Cal. Sept. 27, 2022).

Further, the SAC does not adequately plead the subjective prong of an Eighth Amendment

1    claim. Although Plaintiff contends that he was moved from Building Five to Building Four, there
2    are insufficient factual allegations in the SAC which plausibly suggest that any Defendant knew
3    that doing so subjected Defendant to a substantial risk to his safety.  Plaintiff infers that because
4    there was a warning sign on Building 4, "[t]his shows that B5 and B4 housing staff of [NKSP]
5    were all aware of the health risk to my person by putting me . . . in B4 when I was not sick."
6    (Doc. No. 29 at 8).  Plaintiff also asserts that NKSP Warden Kelly Santoro "was well aware that
7    B4 of [NKSP] was a quarantine building and that I was housed there well [sic] I was not sick."
8    (*Id*. at 10).  As noted above, this conclusory assertion does not establish that Defendant Santoro
9    was aware of Plaintiff's assignment or the risks associated with it.  Even assuming Santoro was
10   aware of Plaintiff's housing placement, this does not establish that Santoro subjectively believed
11   Plaintiff being placed in B4 posed a serious risk to his health and safety. *See May v. Williams*,
12   2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) ("[h]olding a prison official personally
13   responsible for damages simply because he is familiar with a prisoner's circumstances . . . is such
14   a broad theory of liability that it is inconsistent with the personal responsibility requirement for
15   assessing damages against public officials in a 42 U.S.C. § 1983 suit.").

16          Moreover, beyond the fact that Plaintiff was housed in a building that contained both
17   infected and non-infected inmates, Plaintiff does not allege facts reflecting that any Defendant
18   was aware that the housing assignment posed a heightened risk to Plaintiff's safety but
19   disregarded such risk. *See, e.g., Allen v. California Dep't of Corr.*, 2023 WL 2957690, at *5 (E.D.
20   Cal. Apr. 14, 2023) (no Eighth amendment claim for housing plaintiff in building with sick and
21   potentially infected inmates where plaintiff failed, inter alia, to establish that defendants were
22   aware of heightened risk to plaintiff from doing so), report and recommendation adopted, 2023
23   WL 4089120 (E.D. Cal. June 20, 2023).

24          Moreover, the record reflects that Defendant Santoro and prison staff implemented
25   reasonable measures to protect Plaintiff and other inmates from the risks of contracting COVID-
26   19.  Those measures include testing newly arrived inmates for COVID-19, quarantining newly
27   arrived inmates, quarantining inmates who test positive for COVID-19, requiring staff to wear
28   face masks and hazmat suits who enter B4, and, according to CDCR's response to Plaintiff's

1  grievance which is attached to the FAC, cleaning B4 twice per shift, and providing spray bottles
2  of disinfectant for the inmates to use in their housing units.  (*See* Doc. No. 29 at 8, 19, 20, 22).
3  While these efforts may not be perfect, they are a reasonable response.  *See Benitez*, 2021 WL
4  4077960, at *6 (finding implementing measures of quarantining, isolation, vitals check, and
5  restricting housing movement as reasonable); *Kersh v. Gastelo*, 2022 WL 17548074, at *5 (C.D.
6  Cal. Aug. 23, 2022) (finding implementing measures of quarantining, testing, and dorm-
7  reconfiguration as reasonable), *findings and recommendations adopted by*, 2022 WL 16783847
8  (C.D. Cal. Nov. 4, 2022); *see also Martinez*, 2022 WL 126054 at *6.  Furthermore, there are no
9  facts alleged for the Court to infer that temporarily housing Plaintiff in B4 until bed space became
10 available was unreasonable.  Instead, given that prison officials had insufficient bed space in the
11 prison, the decision to temporarily house Plaintiff and a few other inmates in the quarantine
12 building, while not a perfect response, was reasonable.  Thus, Plaintiff fails to satisfy the
13 subjective prong and therefore fails to state a cognizable conditions of confinement claim against
14 any Defendants.  *See Benitez*, 2021 WL 4077960 at *5-6 (finding that housing a prisoner in a
15 dorm with twenty-two other inmates for ten days during the COVID-19 pandemic was not an
16 unconstitutional condition of confinement).

17                          2.   Plaintiff's Assignment as a Porter
18       Plaintiff also challenges his assignment as a porter and alleges this placed him at a
19 heightened risk of exposure to COVID-19.  In his role as a porter, Plaintiff's job was to "sweep,
20 mop, clean showers after sick inmates, pick up breakfast trays from sick inmates with the half
21 eaten food and spit still on the trays."  (Doc. No. 29 at 9).  The SAC alleges that B4 "had no
22 cleaning supplies at all" when he arrived and that "staff had to order all supplies upon our
23 arrival."  (*Id.*).
24       A prisoner's labor can constitute a condition of confinement, where the prisoner has no
25 choice but to work in some capacity within the prison.  *Morgan v. Morgensen*, 465 F.3d 1041,
26 1045 (9th Cir. 2006), *opinion amended on reh'g*, 2006 WL 3437344 (9th Cir. Nov. 30, 2006).
27 The Eighth Amendment is implicated in the prison work context only when a prisoner employee
28 alleges that a prison official compelled him to "perform physical labor which [was] beyond [his]

                                        11

1  strength, endanger[ed his life] or health, or cause[d] undue pain." *Berry v. Bunnell*, 39 F.3d 1056,
2  1057 (9th Cir.1994) (per curiam); *see also Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995)
3  (analyzing under the Eighth Amendment a prisoner's claim that his health was endangered when
4  he was forced to remove asbestos without protective gear).

5        Here, the SAC sets forth facts sufficient to satisfy the objective prong of the deliberate
6  indifference analysis. Plaintiff alleges Building 4 at NKSP was a quarantine building and housed
7  infected inmates. Plaintiff was required to perform tasks that put him in close contact with those
8  inmates. The SAC does not, however, set forth facts showing that any Defendant was
9  deliberately indifferent to the risk posed by Plaintiff's work assignment. The SAC notes that
10 upon his arrival at B4 there was a lack of cleaning supplies and staff ordered more. The SAC
11 contains no allegations that Plaintiff was forced to perform his work without proper protective
12 equipment or cleaning supplies. While there was some inherent risk in Plaintiff's work
13 assignment, the mere fact that Plaintiff was assigned to be a porter for a quarantine building does
14 not establish an Eighth Amendment violation. *See Nowlin v. Carvajal*, 2021 WL 5911665, at *6
15 (C.D. Cal. Oct. 15, 2021) (finding no Eighth Amendment violation where plaintiff was assigned
16 to the food service area, where he was required to handle PPE that was allegedly contaminated
17 and work in the same "general area" as an officer, who tested positive for COVID-19, but
18 officials were not deliberately indifferent to the risk of harm), *report and recommendation*
19 *adopted*, 2021 WL 5908842 (C.D. Cal. Dec. 13, 2021). Beyond describing the tasks involved in
20 his work assignment, Plaintiff does not set forth facts reflecting that Defendant Dominguez or any
21 other Defendant exhibited deliberate indifference to a serious risk to his safety.

22       Plaintiff asserts that "in a quarantine building staff is supposed to clean" and cites Cal.
23 Code Regs. tit. 15 § 3397. However, the applicable section states only that in an emergency, "any
24 employee must perform any service, including custodial functions, if so directed by the warden,
25 regional administrator or his or her delegate." Moreover, there is no federal constitutional liberty
26 interest in compliance with state prison regulations. *Solomon v. Felker*, 2013 WL 5375538, at
27 *12 (E.D. Cal. Sept. 24, 2013) ("Plaintiff's allegation that the defendants failed to adhere to the
28 prison's own institutional policies and procedures does not, by itself" give rise to a constitutional

12

1    violation); *Sandin v. Conner*, 515 U.S. 472, 481–82, (1995) (recognizing prison regulations are

2    "primarily designed to guide correctional officials in the administration of a prison" and are "not

3    designed to confer rights on inmates"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir.

4    1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional

5    violation."); *see also Armstrong v. Warden of USP Atwater*, 2011 WL 2553266, at *8 (E.D. Cal.

6    June 24, 2011) (citing same).

7         For reasons set forth above, the SAC fails to state a cognizable Eighth Amendment claim

8    based on Plaintiff's assignment as a porter for Building 4.

9         **E.  Eighth Amendment Deliberate Medical Indifference**

10        Deliberate indifference to the serious medical needs of an incarcerated person constitutes

11   cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429

12   U.S. 97, 104 (1976).  To maintain an Eighth Amendment claim premised on prison medical

13   treatment, the prisoner must show that officials were deliberately indifferent to his medical needs.

14   A finding of "deliberate indifference" involves an examination of two elements: the seriousness

15   of the plaintiff's medical need (determined objectively) and the nature of the defendant's response

16   (determined by defendant's subjective state of mind). *See McGuckin v. Smith,* 974 F.2d 1050,

17   1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d

18   1133, 1136 (9th Cir.1997) (en banc).  On the objective prong, a "serious" medical need exists if

19   the failure to treat "could result in further significant injury" or the "unnecessary and wanton

20   infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  On the subjective

21   prong, a prison official must know of and disregard a serious risk of harm.  *Farmer v. Brennan,*

22   511 U.S. 825, 837 (1994).  Such indifference may appear when a prison official intentionally

23   denies or delays care, or intentionally interferes with treatment once prescribed. *Estelle,* 429 U.S.

24   at 104-05.

25        If, however, the official failed to recognize a risk to the plaintiff—that is, the official

26   "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth

27   Amendment.  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in

28   original).  That is because deliberate indifference is a higher standard than medical malpractice.

1   Thus, a difference of opinion between medical professionals—or between the plaintiff and
2   defendant—generally does not amount to deliberate indifference. *See Toguchi v. Chung*, 391
3   F.3d 1051, 1057 (9th Cir. 2004). An argument that more should have been done to diagnose or
4   treat a condition generally reflects such differences of opinion and not deliberate indifference.
5   *Estelle*, 429 U.S. at 107. To prevail on a claim involving choices between alternative courses of
6   treatment, a plaintiff must show that the chosen course "was medically unacceptable under the
7   circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's
8   health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

9   Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429
10  U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d
11  1062, 1082 (9th Cir. 2013). Misdiagnosis alone is not a basis for a claim of deliberate medical
12  indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). A delay in treatment,
13  without more, is likewise insufficient to state a claim. *Shapley v. Nevada Bd. of State Prison*
14  *Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). It is only when an official both <u>recognizes</u> and
15  <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists. *Peralta v.*
16  *Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm
17  from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). And the
18  defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726
19  F.3d at 1074.

20  Other than a passing reference to violation of Plaintiff's "right to medical care" the SAC
21  does not allege facts indicating that any prison official was aware of Plaintiff's serious medical
22  needs but failed to provide medical care, or otherwise was deliberately indifferent to Plaintiff's
23  medical needs. Rather, the SAC and attached documents reflect that Plaintiff was tested and had
24  his health monitored regularly while he was sick with COVID-19, indicating that medical
25  personnel and other prison staff were not deliberately indifferent to his health. Thus, the SAC
26  fails to allege a cognizable Eighth Amendment deliberate medical indifference claim against any
27  Defendant.
28  ////

### F. Equal Protection and Due Process

The SAC makes only a passing reference to the equal protection and due process clauses. (Doc. No. 29 at 3). Other than stating that Plaintiff was "not given the same process rights as other inmates" the SAC is devoid of any facts for this Court to infer that Plaintiff's temporary housing assignment to B-4 violated his equal protection or due process rights. (*Id*). Indeed, Plaintiff acknowledges that he was not singled out when he was transferred to B4 temporary housing instead of general population. (Doc. No. 29 at 6, stating he "along with a few other inmates" were approached by staff about the housing shortage). Thus, the SAC fails to state a claim predicated upon either the equal protection or due process clauses.

## FINDINGS AND RECOMMENDATION

Plaintiff here had two opportunities to cure the deficiencies in his initial complaint. (*See* Doc. No. 22, 29). In its two prior screening orders, the Court instructed Plaintiff in detail on the applicable law and pleading requirements. (*See* Doc Nos. 18, 25). Despite affording Plaintiff an opportunity to correct the deficiencies in his original Complaint, the SAC again fails to adequately state any plausible § 1983 claim and largely repeats the same claims alleged in the First Amended Complaint. (*See* Doc Nos. 22, 29). The undersigned thus finds that any further leave to amend would be futile and recommends the district court dismiss the SAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) *citing Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint); *see also Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal").

Accordingly, it is **RECOMMENDED**:

Plaintiff's second amended complaint be dismissed under § 1915A for failure to state a claim and the action be dismissed.

### NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District

1  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days
2  after being served with a copy of these Findings and Recommendations, a party may file written
3  objections with the Court. Id.; Local Rule 304(b). The document should be captioned,
4  "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge
5  will review these Findings and Recommendations under 28 U.S.C. § 636(b)(1)(C). A party's
6  failure to file objections within the specified time may result in the waiver of certain rights on
7  appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    March 4, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE